NORTHWEST AIRLINES, Inc. v. CIVIL
AERONAUTICS BOARD.

No. 10785.

United States Court of Appeals
District of Columbia Circuit.

Argued May 1, 1951.

Decided Jan. 18, 1952.

Herman F. Scheurer, Jr., Washington, D. C., with whom C. Edward Leasure, Washington, D. C., was on the brief, for petitioner.

Oral Dee Ozment, Attorney, Civil Aeronautics Board, Washington, D. C., with whom Asst. Atty. Gen. H. G. Morison and Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, and John H. Wanner, Associate General Counsel, Civil Aeronautics Board, Washington, D. C., were on the brief, for respondent. Charles H. Weston and Joe F. Nowlin, Attorneys, Department of Justice, and Warren L. Sharfman, Attorney, Civil Aeronautics Board, all of Washington, D. C., also entered appearances for respondent.

Before WILBUR K. MILLER, PROCTOR and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

In its Docket No. 3469, a proceeding which it instituted of its own initiative on August 26, 1948, the Civil Aeronautics Board entered an order on May 5, 1950, granting to Capital Airlines a certificate to operate nonstop flights between Cleveland and New York. The application of Northwest Airlines for such authority, filed September 4, 1945, had not been heard or considered by the Board when it certificated Capital and, for that reason, Northwest petitions for review.

We set forth the status of the parties before the entry of the challenged order, and enough of the nature of the several proceedings before the Board to show how the present controversy arose.

United Airlines, American Airlines and Capital Airlines held certificates for Cleveland-New York service, but only United could make nonstop flights; American and Capital were required to make one stop— the former at Buffalo, the latter at Pittsburgh.

Capital was authorized to operate on its route No. 14 between the Twin Cities and Chicago on the one hand and Washington or Norfolk on the other, with Cleveland and Pittsburgh as intermediate points. The operation was subject to the restriction that nonstop flights between Chicago and Cleveland, Youngstown or Pittsburgh must originate or terminate at Washington or Norfolk. Capital was also certificated for its route No. 55 from New York via Pittsburgh to Asheville and Knoxville, subject to the restriction that flights between Pittsburgh and New York were required to originate or terminate at Chicago (on route No. 14) or at Asheville, Knoxville or points beyond.

Pittsburgh was the only point common to Capital's routes Nos. 14 and 55. Since Cleveland was on route No. 14 and New York was on route No. 55, travel between the two cities required a stop at Pittsburgh. In service between New York and cities west of Pittsburgh on route No. 14, flights were required to start or end at Chicago with a stop at Pittsburgh and at Detroit or Toledo.

Northwest was certificated to render service from Seattle and Portland via Spokane, Minneapolis-St. Paul, Milwaukee, Chicago and Detroit (a) to New York, and (b) to Washington via Cleveland and Pittsburgh, subject to the restriction that all flights east of Milwaukee must originate or terminate at or west of the Twin Cities and at New York or Washington.

Prior to August 26, 1948, the date on which this proceeding was instituted, the following matters were on the Board's docket:

1. Docket Nos. 1789 and 1790. Capital's applications for authority to conduct unrestricted nonstop operations between Chicago and points in Ohio and Pennsylvania.

2. Docket No. 1980. American's application which, among other things, sought unrestricted nonstop authority between Cleveland and New York.

3. Docket No. 2016. Northwest's application for unrestricted nonstop authority between Cleveland and New York.

4. Docket No. 2272. Northwest's application for removal of the restrictions on its Milwaukee-New York service.

None of these matters had been heard, except Capital's applications in Docket Nos. 1789 and 1790, when the present proceeding was instituted on August 26, 1948, by an order of the Board which included the following paragraphs:

"2. That the record in the proceeding on the applications of Capital Airlines, Inc., in Dockets Nos. 1789 and 1790 will be reopened and assigned for further hearing before an examiner of the Board at a time and place hereafter to be designated;

"3. That a proceeding is hereby instituted pursuant to section 401(h) of the Act to determine whether the public convenience and necessity require that Capital Airlines, Inc., be authorized to engage in air transportation on an unrestricted or one-stop basis between Chicago, Ill., Milwaukee, Wis., and Minneapolis-St. Paul, Minn., on the one hand, and New York, N. Y.-Newark, N. J., on the other hand; and that said proceeding be assigned Docket No. 3469 and consolidated for public hearing and decision with the reopened proceeding in Dockets Nos. 1789 and 1790 ordered by Paragraph 2 of this order; * *."

At a prehearing conference the examiner ruled, over the objections of American, Northwest, United and TWA, that the consolidated proceeding included the question of whether Capital's route No. 14 should be extended from Pittsburgh to New York, —an extension which would eliminate the necessity of stopping at Pittsburgh on flights between New York and points west of Pittsburgh, including Cleveland.

American Airlines moved the Board to reverse the examiner's ruling as to the scope of the proceeding and said that, if it did not do so, "* * * then the Board must in all fairness consolidate for hearing in this proceeding that part of American's application in Docket No. 1980 which seeks authority for nonstop service between New York and Cleveland. This application was filed more than three years before the Board's order of August 26, 1948."

Northwest filed exceptions to the examiner's prehearing conference report and moved that its application in Docket No. 2272 for removal of the restrictions on its Milwaukee-New York service be consolidated with the Board's proposals for Capital in Docket No. 3469. Northwest did not, however, enter a formal motion that its application for nonstop authority between Cleveland and New York, Docket No. 2016, be consolidated with Docket No. 3469.

In response to these motions the Board ruled, on December 9, 1948, that the question of nonstop service between New York on the one hand and points on Capital's route No. 14 west of Pittsburgh on the other was intended to be placed in issue by the Board's order of August 26, 1948, which initiated the proceeding; and the initiating order was amended so as to remove all doubt as to whether the Board had so intended.[1] Thus the Board sustained the examiner's decision, contained in his prehearing conference report, that the proceeding bearing Docket No. 3469 included the question whether Capital should be authorized to render nonstop service between New York and Cleveland.

By the order of December 9, 1948, Docket No. 3469 (the Board's proposals for Capital) was consolidated with two other applications: (a) American's application for nonstop authority between Cleveland and New York,[2] and (b) Northwest's applica-

1. The order of December 9, 1948, amended the initiating order of August 26, 1948, so as to make the purpose of the proceeding thereby instituted

"* * * to determine whether the public convenience and necessity require that route No. 14 of Capital Airlines be extended to New York-Newark in such manner as to authorize service by Capital

Airlines between New York-Newark and Pittsburgh, and between New York-Newark and any point on route No. 14 west of Pittsburgh, on an unrestricted and nonstop basis, or so as to authorize any part of the foregoing. * * *"

2. This application had been part of Docket No. 1980 but was severed therefrom and assigned a new docket number, 3583,

tion for removal of the restrictions on its Milwaukee-New York service, Docket No. 2272. But the Board did not consolidate, for hearing with the others, Northwest's application for unrestricted New York-Cleveland authority, which had long been pending as Docket No. 2016.

Hearings in the consolidated proceedings were held during the period from January 31, 1949, to February 9, 1949, following which the examiner recommended that Capital be allowed unrestricted nonstop Cleveland-New York service. On June 10, 1949, Northwest filed exceptions to the examiner's report, expressly objecting to the grant to Capital of nonstop Cleveland-New York service without a simultaneous hearing of Northwest's application for the same service.[3] In oral argument before the Board on September 12, 1949, counsel for Northwest stressed the same point in the exceptions.[4]

Thus on two occasions Northwest sharply called to the Board's attention its desire for a comparative hearing of its long-pending application for New York-Cleveland nonstop authority. On May 25, 1950, nearly a year after Northwest's exceptions were filed, the Board sustained the examiner by certifying Capital to operate nonstop service between Cleveland and New York, and by rejecting American's application for authority to render that service. This is the order of which Northwest complains.

In its petition for review Northwest alleged a number of errors, but it was later stipulated that only these allegations of error should be considered:

(a) "That the Board exceeded its statutory powers by failing to include in its order of consolidation all applications then pending for service in the area under consideration, including Northwest's Docket No. 2016."

(b) "That Petitioner's rights to a full, fair hearing on its application for Cleveland-New York service have been fatally prejudiced as a result of the Board's action herein contrary to the Constitution and laws of the United States."

In opposition the Board asserts: (a) that the grant to Capital, being a mere improvement in its existing one-stop Cleveland-New York authority, and not a

---

and was then consolidated with Docket No. 3469, the Board's proposals for Capital.

3. We quote from the exceptions filed by Northwest: " * * * Furthermore, Northwest has had on file with the Board an application for authorization of Cleveland-New York nonstop service since September 4, 1945, Docket No. 2016. It does not appear in the record when, if ever, Capital's application for extension of route No. 14 to New York was filed. The Board's order in Docket No. 3469 to determine whether Capital's route No. 14 should be extended into New York in such manner as to allow Capital to conduct unrestricted operation between New York on the one hand and Pittsburgh and points west of Pittsburgh on route No. 14 on the other, does not constitute an application by Capital for such service, and even if the Board's order constituted an application for service by Capital so as to obviate the barrier of the State Airlines decision of the U. S. Court of Appeals, District of Columbia, April 6, 1949 [State Airlines, Inc., v. Civil Aeronautics Board, 84 U.S.App.D. C., 374, 174 F.2d 510], it comes at least three years after the filing of North-

west's application for the very service herein recommended by the Examiner for Capital. Certainly the procedural due process requirements announced by the U. S. Supreme Court in the case of Ashbacker Radio Corporation v. Federal Communications Commission, 326 U.S. 327, 66 S.Ct. 148 [90 L.Ed. 108], are not met if the Board adopts this recommendation before Northwest's application is even heard, as a decision granting Capital such nonstop Cleveland-New York authorization would so increase the volume of available service in that area as to preclude the Board's granting or at least affect the Board's determination of Northwest's application at a later date. Certainly Northwest's burden will be substantially increased thereby."

4. He said: " * * * Furthermore, Northwest might point out they have had an application in for an awfully long time to serve Cleveland-New York on its New York route, and to put Capital into this service would certainly affect that application. Therefore it shouldn't be considered until Northwest's application, which was filed a long time ago, is considered."

certification for a new service, could be made without hearing Northwest's application; (b) that the award to Capital of nonstop authority between Cleveland and New York and Northwest's application for such authority were not mutually exclusive, and so a comparative hearing was not required; and (c) that, assuming mutual exclusiveness *arguendo,* nevertheless, as Northwest did not properly and seasonably request that its application be consolidated with the other proceedings, it was not the Board's duty to grant it comparative consideration.

■ 1. Was the grant to Capital a mere improvement in its existing one-stop service between the two cities which could be authorized without hearing Northwest's application?

The Board says in argument: " * * * the proceeding did not involve any requests for services to points or between points not already served by the applicants, but on the contrary, was limited to the question of improvements in existing service; * * * " [5] and goes on to speak of the grant of nonstop authority to Capital as being "in lieu of former one-stop authority." But in the opinion which accompanied its order of May 25, 1950, the Board spoke of its new certification of Capital as providing "nonstop service in addition to its present one-stop service." We do not read Capital's amended certificate as having eliminated its one-stop authority between New York and Cleveland. We agree with this comment in the dissenting opinion of Board Member Jones: "The decision of the majority does considerably more than to effect a simple 'improvement of existing service.' Basically, it amounts to the creation of an important new route for Capital between Cleveland and New York on an unrestricted point-to-point basis, which will duplicate the service now being operated by United."

We hold, therefore, that the authorization of Capital was not a mere improvement in existing service, but was a new authority which the Board could not grant without first hearing and comparatively considering all other pending and mutually exclusive applications by other carriers who had not somehow waived or forfeited their right to such hearing and consideration.

■ 2. Were the award of nonstop authority to Capital and the application of Northwest for the same authority mutually exclusive? They were not, says the Board, because the award to Capital did not preclude a subsequent grant of Northwest's application; the mere possibility that Northwest, as a result of the award to Capital, may have a lessened probability of future success does not create an Ashbacker situation.[6] But in its opinion of May 25, 1950, having found that the public convenience and necessity required the authorization of Capital for nonstop service between New York and Cleveland, the Board said, in rejecting American's application for such authority: " * * * There is not sufficient traffic to support three nonstop operators in this market and the application of American must therefore be denied."

This means that, at the time the order was entered, American's application for the Cleveland nonstop service and the award of that service to Capital were, in the Board's opinion, economically mutually exclusive.[7] That being so, Northwest's

5. Even so, the Board regarded it as necessary, or at least proper, to compare the two proposals for "improvements in existing services" before determining which carrier should be certificated to compete with United in nonstop service. See note 7.

6. A reference to the principle laid down by the Supreme Court in Ashbacker Radio Corp. v. Federal Communications Commission, 1945, 326 U.S. 327, 66 S.

Ct. 148, 90 L.Ed. 108, which will be discussed later in this opinion.

7. Further indication of the Board's opinion that all applications for authority to compete with United in nonstop operations between Cleveland and New York were mutually exclusive is shown by the Board's action in consolidating American's application with its proposals for Capital. Mutual exclusiveness must have motivated that action.

unconsolidated application for such authority was also mutually exclusive with the award to Capital and the application of American, for the economic reason that the traffic would not support more than two nonstop operators.

Under the Board's reasoning there could hardly be a situation in which two or more applications would be mutually exclusive, as it could always be pointed out that the grant of one would not preclude the grant of others at some time in the indefinite future when the volume of air traffic might have developed to the extent that an additional carrier or carriers could be supported. The test of mutual exclusiveness because of economic conditions should be as of the time the applications are being considered and an award is being made. Northwest had just as much right to be considered as a candidate for nonstop authority to compete with United as had Capital and American, unless, as the Board claims, it had forfeited its right to be considered because it failed to file a formal motion or petition that its application be heard simultaneously with those of the other two carriers.

Our conclusion is that the Board's proposal for Capital and the applications of American and Northwest were mutually exclusive.

 3. Where two bona fide applications are mutually exclusive, it is ordinarily true that one may not be granted without a hearing to both. This fundamental principle of fair play was announced by the Supreme Court in Ashbacker Radio Corporation v. Federal Communications Commission, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108, decided December 3, 1945. In that case Fetzer applied in March, 1944, for authority to construct a new broadcasting station at Grand Rapids. In May, 1944, before the Commission had acted on Fetzer's application, Ashbacker applied for permission to operate at Muskegon on the same frequency which Fetzer had asked for Grand Rapids. The Commission said intolerable interference would result to both and that the applications were "actually exclusive." In June, 1944, the Fetzer application was granted without a hearing and on the same day Ashbacker's application was designated for hearing. Ashbacker then filed a petition for hearing, rehearing and other relief, directed against the grant of the Fetzer application. It does not appear that Ashbacker had moved for a consolidated hearing of the two applications prior to the issuance of the license to Fetzer. The Supreme Court summarized its decision thus, 326 U.S. at page 333, 66 S.Ct. at page 151: "* * * We only hold that where two *bona fide* applications are mutually exclusive the grant of one without a hearing to both deprives the loser of the opportunity which Congress chose to give him."

This court said in 1949, writing in Seaboard & Western Airlines v. Civil Aeronautics Board, 86 U.S.App.D.C. 9, 11–12, 181 F.2d 777, 779–780, "* * * it seems equally clear that if the Board has under consideration in a pending proceeding the fixing of routes, generally or of a specific nature, in an area and the selection of carriers to operate over those routes, it must include in the proceeding all pending applications for certificates over such proposed routes. Otherwise, the statutory rights of excluded applicants to hearing and decision upon their applications would be futile."

It is not bound to follow this procedure even in cases of clearly conflicting applications, the Board says, unless suitable requests for consolidation are made by the persons concerned, as it cannot be expected to search its own files for applications which might conflict with the one being considered. Whether so or not, we need not decide, for here Northwest's exceptions to the examiner's report, filed nearly a year before decision, pointed out the existence of an Ashbacker situation and requested comparative consideration. The only questions are: (a) was this a sufficient request or was it necessary, as the Board insists, that the request be made by formal motion or petition; and (b) did Northwest forfeit its right to a simultaneous hearing, even if its exceptions sufficed as a request for consolidation, by not mak-

ing the request before the examiner's hearing began?

As to the first of these questions, doubtless it would have been better practice for Northwest to file a formal motion or petition that its application be consolidated with the others for hearing. But the only function of such a motion or petition is to draw to the Board's attention the existence of an Ashbacker situation and the desire of the applicant to have a comparative hearing. When that information is given to the Board in less formal fashion, as it was in this case, it would be harsh indeed to deny the applicant a fundamental right simply because of the informality of his approach. We hold that Northwest's exceptions to the examiner's report and the statement of its counsel in oral argument before the Board were sufficient to apprise the Board of Northwest's belief that its application and the grant to Capital were mutually exclusive, and that it therefore desired to be compared with Capital and American before the Board selected the one carrier to be certificated as United's nonstop competitor.

The remaining question is as to the timeliness of Northwest's request for consolidation. The Board says in its brief, "* * * The carrier's contention that there was an Ashbacker situation was not brought home to the Board until after it had decided the case, and certainly the Board was not then required to reopen its proceeding."

As we have shown, however, the exceptions to the examiner's report filed by Northwest on June 10, 1949, expressly objected to the grant to Capital of nonstop Cleveland-New York service without a simultaneous hearing of Northwest's application for the same service. This was nearly a year before the Board's decision of May 25, 1950. Moreover, we have seen that in oral argument before the Board on September 12, 1949, which was eight months before the Board's decision, counsel for Northwest pointed out the existence of an Ashbacker situation.

In the face of these facts the Board says in its brief, "Northwest's contention [8] obviously, and understandably, was overlooked by the Board, else it would have made a finding thereon." But Northwest's contention could not be overlooked to its prejudice after it had been twice called to the Board's attention months before decision.

It is true, however, that the request for consolidation contained in the exceptions to the examiner's report came after the hearing before the examiner had been completed. The Board contends that "* * * even if the exception noted to the examiner's report should be construed as a sufficient request for consolidation into the proceeding of Northwest's application, it nevertheless came too late since consolidation at that time would have required a reopened and greatly expanded proceeding and still another examiner's report."

Certainly consolidation at that time would have required a reopened proceeding and another examiner's report, but the Board does not point out, and we do not see, why the reopened proceeding would have been "greatly expanded" when its only purpose would have been to examine Northwest's qualifications so that it might be compared with Capital and American in the selection of a competitor for United. The time element did not preclude the reopening for that limited purpose, as the Board waited nearly a year after the request for consolidation before it decided the case. Perhaps it would have been somewhat inconvenient for the examiner to conduct a hearing on Northwest's application and to make another report comparing it with the other two carriers; but such inconvenience does not justify the denial of Northwest's right to procedural due process, especially since the Board's decision would not have been thereby delayed.

---

8. Northwest's contention was described by the Board as being "* * * that the Ashbacker principle required contemporaneous consideration of Northwest's Cleveland application with any award of nonstop Cleveland-New York authority to Capital. * * *"

346

The Board further says it did not regard the present proceeding as involving the grant of a new route, and did not think the grant to Capital would preclude the grant of Northwest's pending application, and therefore did not grant Northwest simultaneous consideration.[9] This statement, which indicates the Board was aware of the nature and pendency of Northwest's application but decided not to grant a comparative hearing because it thought Northwest's proposal did not conflict with the grant to Capital, is somewhat inconsistent with the Board's contention that it overlooked Northwest's application because a motion or petition for consolidation was not filed. As we held earlier in this opinion, the certification of Capital for nonstop service not only granted new-route authority, but also precluded the grant of Northwest's application for that authority, just as the Board itself said it precluded the grant of such authority to American. The Board erred, therefore, in failing to follow its usual procedure of hearing these conflicting applications in a single proceeding or of ruling on them simultaneously.

The Board's order certificating Capital Airlines for nonstop operations between Cleveland and New York will be set aside. The case will be remanded to the Board with instructions to reopen the proceedings, to consolidate therewith Northwest's application in Docket No. 2016, to conduct a hearing thereon, and to give comparative consideration to Capital, American and Northwest before deciding which carrier shall be authorized to compete with United in the nonstop service. Pending such hearing, which should be held with reasonable promptness, the Board may take such action within its lawful authority with respect to maintenance of service presently being rendered as it may deem required by the public interest.

Reversed and remanded.

9. We quote from the Board's brief: "* * * Had the proceeding here involved been regarded as a new route proceeding or if it had been thought that the action taken therein would preclude the grant of any pending application, this

same procedure [the practice of hearing conflicting applications in a single proceeding or of ruling on such applications simultaneously] undoubtedly would have been followed in this case."