228 F.2d 13
 97 U.S.App.D.C. 42, 12 P.U.R.3d 354
 UNITED AIR LINES, Inc., Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent, American Airlines,
Inc., Intervenor, Trans World Airlines, Inc.,
Intervenor, Continental Air Lines, Inc.,
Intervenor.
 No. 12043.
 United States Court of Appeals District of Columbia Circuit.
 Argued May 28, 1954.
Decided June 30, 1955.
 
 Mr. John T. Lorch, Chicago, Ill., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of Court, with whom Messrs. James Francis Reilly and Joseph A. Reilly, Washington, D.C., were on the brief, for petitioner.
 Mr. John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Board with whom Messrs. Emory T. Nunneley, Jr., Gen. Counsel, Civil Aeronautics Board, James L. Highsaw, Jr., Chief, Litigation and Research Division, Civil Aeronautics Board, and O. D. Ozment, Atty., Civil Aeronautics Board, were on the brief, for respondent.
 Mr. Charles H. Weston, Atty., Dept. of Justice, entered an appearance for respondent.
 Mr. James K. Crimmins, New York City, submitted on the brief for intervenor Trans World Airlines, Inc.
 Messrs. Howard C. Westwood, Ernest W. Jennes, Washington, D.C., and John W. Douglas, New York City, entered appearances for intervenor American Airlines, Inc.
 Messrs. C. Edward Leasure and Herman F. Scheurer, Jr., Washington, D.C., entered appearances for intervenor Continental Air Lines, Inc.
 Before WILBUR K. MILLER, FAHY and DANAHER, Circuit Judges.
 DANAHER, Circuit Judge.
 
 
 1
 This is an appeal from orders of the Civil Aeronautics Board denying in part petitioner's motion for consolidation of its entire application in C.A.B. Docket No. 5972 with the so-called Denver Service [97 U.S.App.D.C. 43] Case.[1] We are met at the threshold with the contention by the Board that the order is interlocutory and procedural, and not presently subject to our review. Pertinent facts follow.
 
 
 2
 In 1945, Trans World Airlines filed an application (Docket 1841) for amendment of its certificates of public convenience and necessity to include Denver, Colorado, as an intermediate point on various segments of its transcontinental routes. This application, by public notice, was set down for prehearing conference before a Board examiner on February 24, 1953. Thereupon, numerous other certificate applications were filed with the Board with the request that they be consolidated and heard with TWA's Denver application.
 
 
 3
 United filed four applications in all, of which one, (Docket 5972) is specifically involved in this case. In this latter application United, already authorized to serve Denver on its transcontinental certificate, sought to add the points of Kansas City, Pittsburgh, Columbus, Dayton, Cincinnati, Indianapolis and St. Louis.
 
 
 4
 American Airlines, also a transcontinental operator, in its application (Docket 5966) requested authority to serve Denver and Kansas City. American further requested that these authorizations be granted by extending its routes 7 and 25 from Chicago, their present terminal points, to San Francisco and Los Angeles, which are terminal points on American's route 4.
 
 
 5
 Although there were various other route applications involving a variety of proposals for certification for additional points, we have before us, affecting transcontinental operations, only TWA's original application (Docket 1841), the application by United which is at issue (Docket 5972), and American's application (Docket 5966). United alone presently serves the city of Denver transcontinentally.
 
 
 6
 In its first order dated August 6, 1953 granting and denying requests for consolidation and severing applications, the Board stated that 'the purpose of this proceeding should be directed primarily to determining the needs of Denver for additional east-west service . . ..' Purporting to act upon this premise, the Board ordered to be consolidated for hearing the following: (1) all of TWA's application in Docket No. 1841, except those portions proposing service to Phoenix and proposing service to Denver as an intermediate point on an alternate course between Phoenix, Arizona, and St. Louis, Missouri; (2) that portion of American's application in Docket No. 5966 for an amendment of its certificates for routes Nos. 7 and 25 so as to extend them beyond Chicago and to the intermediate points, Kansas City and Denver, and beyond Denver, to Oakland/San Francisco and to Los Angeles; and (3) that portion of United's application in Docket No. 5972 seeking authority to serve Kansas City as an intermediate point between Denver and Chicago. The remainder of United's application under which it sought to add Pittsburgh, Columbus, Dayton, Cincinnati, Indianapolis and St. Louis to its existing transcontinental certificate was denied consolidation. Other applications approved for consolidation were Braniff's, for an extension of its route from Kansas City to Denver; Continental's for an extension of its routes beyond Kansas City, east to Chicago, and beyond Denver west to San Francisco and Los Angeles; Western's for an extension of its route beyond Denver to San Francisco/Oakland; and North American's for a route between Los Angeles and Chicago via Denver and Kansas City.
 
 
 7
 On reconsideration, the Board issued an amended order on November 6, 1953, adding to the consolidated hearing the issue of additional service to Salt Lake City by Western and Continental. At [97 U.S.App.D.C. 44] again refused to consolidate the remainder of United's application, stating that these proposals related 'in a substantial degree to numerous issues beyond the scope of this proceeding.'
 
 
 8
 Subsequently, on request of the Chamber of Commerce of Reno, Nevada, the Board on March 4, 1954, also included in the consolidated proceeding and application by the City for additional east-west air transportation service to Reno.
 
 
 9
 United's position basically is that the Board has misconceived the scope of the pending proceeding. Under its view, the proceeding is not a Denver Service Case at all, but in effect, involves a competitive realignment of the transcontinental route systems of American, TWA and United. The view derives from the fact that the services requested in the applications of American and TWA, which were consolidated, if added to the existing transcontinental services of these carriers, would affect not only Denver service but their entire transcontinental routes. More precisely, United's excluded application sought to add to United's existing transcontinental certificate, which includes Denver, the points of Pittsburgh, Columbus, Dayton, Cincinnati, Indianapolis and St. Louis, all of which are now served by TWA and American, except Pittsburgh which is served transcontinentally only by TWA. United argues that the application of TWA for Kansas City-Denver service in effect is a proposal by that carrier for a New York-Philadelphia-Pittsburgh-Dayton-Columbus-Indianapolis-St Louis-Kansas City-Denver-Los Angeles route; in short, precisely the route which United would acquire if it were to prevail as to the points named in its excluded application.
 
 
 10
 We think that there is much substance to United's contention, indeed we have most carefully weighed and have extensively explored all claims in the thought that a comparative hearing on United's excluded application might be required under the Ashbacker rule. Ashbacker Radio Corp. v. Federal Communications Comm., 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108. We were constrained to such a conclusion in Northwest Airlines v. Civil Aeronautics Board, 1952, 90 U.S.App.D.C. 158, 194 F.2d 339. But our present case, in last analysis, is different.
 
 
 11
 Clearly, the Board's task is to determine the possible needs of Denver for additional east-west service. The Board may find (a) that no such additional service is required or (b) if necessary, that various interchanges of service over existing routes will suffice rather than that new certificate authority be granted, or (c) that Denver should be added as an intermediate point to the transcontinental routes of TWA and American as well as United. Under such circumstances, we cannot properly say that there will be mutual exclusivity between United and any one of its competitors. We do not blind ourselves to the ultimate fact that should Denver be added to the transcontinental routes of TWA or American, or both, United will be confronted with transcontinental competition for an important segment of its present route without compensating access to the heavily populated, commercial areas it seeks to have considered in this proceeding. Despite United's strong contention we cannot anticipate the Board's action, and to do so at this stage, we have concluded, would be an invasion of the Board's function.
 
 
 12
 Moreover it is the undeniable fact that there has been no 'effectual disposition of rights.' Seaboard & Western Airlines v. Civil Aeronautics Board, 1949, 86 U.S.App.D.C. 9, 11, 181 F.2d 777, 779. In that case as here, the Ashbacker doctrine was urged, but the principle is clear that '. . . Administrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.' Chicago & Southern Air Lines, Inc., v. Waterman S.S. Corp., 1948, 333 U.S. 103, 112-113, 68 S.Ct. 431, 437, 92 L.Ed. 568. Cf. Isbrandtsen Co. v. United States, 1954, 93 U.S.App.D.C. 293, 211 F.2d 51, certiorari [97 U.S.App.D.C. 45] denied Japan-Atlantic & Gulf Conference v. United States, 1954, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124. A not dissimilar situation was presented in Western Air Lines v. Civil Aeronautics Board, 9 Cir., 1950, 184 F.2d 545, 551-552, where the court said:
 
 
 13
 'We conclude that the Ashbacker doctrine is not presently applicable to any phase of the several matters in issue because it does not appear that the Board has made any order which finally deprives petitioner of a right. And we perceive no abuse of discretion in the order denying the petition to consolidate . . .. Our decision here, of course, would not preclude a petition for review if, in the development of the several cases, a condition should arise where a decision of one of the cases forecloses an effective hearing of one of the other cases.'
 
 
 14
 Finally, the problem of administration of its own business is singularly within the Board's prerogative. As an informed body it must have wide scope in its administration of the business committed to its charge. In Federal Communications Comm. v. WJR, The Goodwill Station, Inc., 1949, 337 U.S. 265, 283, 69 S.Ct. 1097, 93 L.Ed. 1353, the Court, after Ashbacker, reemphasized what it had earlier said in Federal Communications Comm. v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656.
 
 
 15
 'Necessarily, therefore, the subordinate questions of procedure in ascertaining the public interest, when the Commission's licensing authority is invoked-- the scope of the inquiry, whether applications should be heard contemporaneously or successively, whether parties should be allowed to intervene in one another's proceedings, and similar questions-- were explicitly and by implication left to the Commission's own devising, so long, of course, as it observes the basic requirements designed for the protection of private as well as public interest.'
 
 
 16
 We must be so guided.
 
 
 17
 In conclusion, for all we can now foresee, the Board will decide to grant that portion of United's application in Docket No. 5972 which seeks to serve Kansas City as an intermediate point between Denver and Chicago. Perhaps thereupon it will decide that TWA and American should be authorized to serve Denver. Perhaps it will order, however, that certification of service by these carriers from points east of Chicago and from the West Coast, to and through Denver, shall be held in abeyance until United shall have been heard on the remainder of its application in Docket No. 5972. Perhaps it will decide that the public convenience and necessity require that these three large transcontinental carriers be put on a substantially comparable basis with Denver being opened to service by TWA and American, and Pittsburgh, Columbus, Dayton, Indianapolis and St. Louis being opened to service by United. We can see how such presently hypothetical results might find substantial justification in fact, yet it is not now open to us to do more than speculate.
 
 
 18
 We have said enough to demonstrate from the numerous possibilities which may eventually result from the hearing, the present inadvisability of 'piecemeal' review in cases such as this. When, and if, the Board makes a final order with respect to any of the proposals in the pending Denver Service Case, in which United has a substantial interest, United may obtain a review of such action and, as an incident thereto, review of the Board's consolidation order.
 
 
 19
 We conclude that at the present stage of the proceeding, the orders involved are interlocutory and not appealable.[2] Accordingly, the petition for review is
 
 
 20
 Dismissed.
 
 
 
 [1]
 Petitioner seeks review, both of the Board's order denying consolidation and the order denying reconsideration of the first order. Since the issues as to both are the same, and the denial of reconsideration is not in and of itself appealable, we consider the case as if it were only an appeal from the order denying consolidation
 
 
 [2]
 In view of our disposition of the case, it is unnecessary for us to consider whether the petition for review of the Board's initial order was timely