241 F.2d 445
 100 U.S.App.D.C. 40, 18 P.U.R.3d 303
 NORTH AMERICAN AIRLINES, Inc. et al., Petitioners,
v.
CIVIL AERONAUTICS BOARD, Respondent, American Airlines,
Inc., Intervenor, Trans World Airlines, Inc., Intervenor,
Continental Air Lines, Inc., Intervenor, City of Kansas
City, Missouri, Intervenor, United Air Lines, Inc., Intervenor.
 No. 13053.
 United States Court of Appeals District of Columbia Circuit.
 Argued June 8, 1956.
Decided Jan. 17, 1957.
 
 [100 U.S.App.D.C. 41] Mr. William C. Burt, Washington, D.C., with whom Mr. Hardy K. Maclay, Washington, D.C., was on the brief, for petitioners.
 Mr. Robert L. Park, Atty., Civil Aeronautics Board, with whom Messrs. Franklin M. Stone, Gen. Counsel, John H. Wanner, Associate Gen. Counsel, O. D. Ozment, Chief, Litigation and Research Division, Gerald F. Krassa, Atty., Civil Aeronautics Board, and Daniel M. Friedman, Atty., Department of Justice, were on the brief, for respondent.
 
 
 1
 Mr. James K. Crimmins, New York City, for intervenor Trans World Airlines, Inc. Mr. William Caverly, Washington, D.C., also entered an appearance for intervenor Trans World Airlines, Inc.
 
 
 2
 Messrs. Ernest W. Jennes and John W. Douglas, Washington, D.C., were on the brief for intervenor American Airlines, Inc. Mr. Howard C. Westwood, Washington, D.C., also entered an appearance for intervenor American Airlines, Inc.
 
 
 3
 Messrs. C. Edward Leasure and Herman F. Scheurer, Jr., Washington, D.C., were on the brief for intervenor Continental Air Lines, Inc.
 
 
 4
 Messrs. Charles S. Rhyne and J. Parker Connor, Washington, D.C., entered appearances for intervenor City of Kansas City, Missouri.
 
 
 5
 Mr. James Francis Reilly, Washington, D.C., was on the brief for intervenor United Air Lines, Inc.
 
 
 6
 Before EDGERTON, Chief Judge, and WASHINGTON and DANAHER, Circuit judges.
 
 
 7
 EDGERTON, Chief Judge.
 
 
 8
 The Denver Service Case, one of the Civil Aeronautics Board's major area proceedings dealing with proposals for new or improved air service, originated with an application of Trans World Airlines, filed in 1945, to add Denver to its transcontinental routes. A prehearing conference, in which the present petitioners did not participate, was held February 24, 1953. On April 3, 1953, petitioners, who are three large irregular air carriers and their affiliates,[1] applied for extensive new routes, including one from San Francisco via Los Angeles, Denver, Chicago and other points to New York. They moved to consolidate their application '* * * or such parts thereof as the Board may deem proper' in the Denver Service Case and in other area proceedings. The Board consolidated the part of petitioners' application that sought authority east of Chicago [100 U.S.App.D.C. 42] with the New York-Chicago Service Case; another part with another case; and the part that sought authority 'between Los Angeles and Chicago via Denver and Kansas City' with the Denver Service Case.[2]
 
 
 9
 On April 29, 1954, some eight months after the initial consolidation order, and after another prehearing conference had been held, exhibits exchanged, and the proceeding noticed for hearing, petitioners moved for either (1) consolidation in the Denver Service Case of the part of their original application that sought authority east of Chicago, or (2) elimination from the Denver Service Case of 'the issue of nonstop service from points east of the gateways' (Chicago and St. Louis). Petitioners contended that awards to other applicants, coupled with existing routes of those applicants, would make such service possible, and that petitioners were entitled to simultaneous hearing in regard to it. The Board denied the motion, both as untimely and as unduly expanding the issues and delaying the case. After hearing, the Board denied petitioners' application for new routes. Petitioners appeal from both denials.
 
 
 10
 Ashbacker Radio Corp. v. Federal Communications Commission, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108, held that mutually exclusive radio applications must be heard together. But the Court said: 'Apparently no regulation exists which, for orderly administration, requires an application for a frequency, previously applied for, to be filed within a certain date.' 326 U.S. at page 333, 66 S.Ct. at page 151. When we decided Northwest Airlines v. Civil Aeronautics Board, 90 U.S.App.D,C. 158, 194 F.2d 339, no regulation of the Board required an application for consolidation to be filed within a certain date. But the Board's Rule 12 now requires that a motion to consolidate one application with another be filed not later than the prehearing conference on the other, unless 'good cause' for late filing is shown.[3] The Board granted petitioners' first motion for consolidation because it found good cause for its being filed late. The order granting that motion contained the very provisions on which petitioners, after long delay, based their motion for a further consolidation. The Board denied this later motion on the ground that it was not timely filed and that granting it would greatly expand the geographic scope of the proceeding. The Board did not act arbitrarily in denying this motion.
 
 
 11
 Petitioners asked for authority to operate air coach service between large cities. Their contentions, fully set out by the Examiner, are chiefly that air transportation now requires the entry of a new passenger trunkline carrier, and that as low-fare coach operators petitioners have a unique record. The Examiner cited the Transcontinental Coach-Type Service Case,[4] in which the Board recognized the benefits of coach service but did not conclude that certification of those offering such service would be in the public interest. The Examiner pointed out that the 'Board's basic problem is still to increase competition while strengthening existing carriers to be self-sustaining in accordance with the mandates of the Act.' The Board's awards to Continental and to Western were based in large part on a desire to strengthen those existing carriers. And the Board thought the services offered by North American would be for various [100 U.S.App.D.C. 43] reasons less 'effective' than those that other carriers could furnish. We think the record supports these and similar findings of the Board.
 
 
 12
 After making these findings the Board said: 'Finally, we are denying North American's application because we are unable to find the applicant 'willing' to comply with the Act and the Board's regulations.[5] In this regard, we adhere to our findings set forth in the New York-Chicago Case.' In the New York-Chicago Case the Board declared itself unable, because of past violations of the Act to find the present petitioners 'willing to comply'. When we reviewed that case petitioners argued, as they do now, that the Board should not consider their violations without considering those of other applicants. We rejected that argument, largely on the ground that petitioners' violations 'had nothing to do with the Board's order'.[6] Here, of course, the situation is different, at least in the Board's choice of language. But the Board's findings that the intervenors would serve the public interest by their proposed operations, whereas petitioners would not, were valid, and sufficient to support its action. Petitioners' application could justifiably be denied on the basis of those findings, absent some essential unfairness or failure to observe statutory requirements. We find neither in this case. Accordingly, no useful purpose would be served by our reviewing the Board's finding in regard to 'willingness'. Cf. Kuhn v. Civil Aeronautics Board, 87 U.S.App.D.C. 130, 132, 135, 183 F.2d 839, 841, 844; and see North American Airlines v. Civil Aeronautics Board, 100 U.S.App.D.C. , 240 F.2d 867, decided December 20, 1956.
 
 
 13
 Affirmed.
 
 
 
 [1]
 See North American Airlines, Inc. v. Civil Aeronautics Board, 99 U.S.App.D.C. 55, 237 F.2d 209, decided September 13, 1956
 
 
 [2]
 The Board afterwards amended its order to make it clear that the application involved San Francisco as well as Los Angeles. By other orders, the Board added issues of service to and from Kansas City and Reno
 
 
 [3]
 Rule 302.12 as amended, effective September 15, 1952, 17 F.R. 7419-20; 14 CFR 302.12
 That such a rule may extinguish private rights not timely asserted does not invalidate it. Beaumont Broadcasting Corp. v. Federal Communications Commission, 91 U.S.App.D.C. 111, 202 F.2d 306.
 
 
 [4]
 14 C.A.B. 720
 
 
 [5]
 We understand the word 'Finally', in this context, to include the sense of 'Also'. We take the sentence just quoted to mean: We are denying North American's application not only for the foregoing reasons but also because we are unable to find the applicant willing to comply with the Act and the regulations
 
 
 [6]
 North American Airlines, Inc., v. Civil Aeronautics Board, 99 U.S.App.D.C. 55, 237 F.2d 209, decided September 13, 1956