271 F.2d 752
 EASTERN AIR LINES, INC., Capitol Air-ways, Inc., City of
Nashville and the Nashville Chamber of Commerce, petitioners,
v.
CIVIL AERONAUTICS BOARD, Respondent, Delta Air Lines, Inc.,
Northwest Airlines, Inc., Capital Airlines, Inc.,
et al., Intervenors.
 Nos. 341, 342, 344, Docket 25422, 25434, 25532.
 United States Court of Appeals Second Circuit.
 Argued June 3, 1959.
Decided Oct. 7, 1959, Rehearing Denied Dec. 15, 1959.
 
 Harold L. Russell, Atlanta, Ga. (Gambrell, Harlan, Russell, Moye & Richardson, E. Smythe Gambrell, James H. Bratton, Jr., and Allison Wade, Atlanta, Ga., of counsel), for Eastern Air Lines, Inc.
 R. S. Maurer and James W. Callison, Atlanta, Ga. (Frank F. Rox, Atlanta, Ga., of counsel), for Delta Air Lines, Inc.
 C. Frank Reavis, New York City (Hodges, Reavis, McGrath & Downey, Robert Thrun, Frederick R. Adler, Richard B. Smith, New York City; Leasure & Pendleton, Washington, D.C., of counsel), for Northwest Airlines, Inc.
 Robert B. Hankins, Macon M. Arthur, Washington, D.C. (Adair, Ulmer, Murchison, Kent & Ashby, Jacksonville, Fla., Charles H. Murchison, Jacksonville, Fla., James H. Bastian, Washington, D.C., of counsel), for Capital Airlines, Inc.
 Coates Lear, Lloyd Fletcher, Washington, D.C., for Capitol Airways, Inc.
 D. L. Lansden, Lawrence Dortch, Nashville, Tenn., Robert Redding, Silver Spring, Md. (Howard F. Cerny, New York City, Waller, David & Lansden, Nashville, Tenn., of counsel), for City of Nashville and Nashville Chamber of Commerce.
 Edmund A. Stephan, Robert L. Stern, Flody M. Rett, Chicago, Ill. (Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel), for United Air Lines, Inc.
 Victor R. Hansen, Asst. Atty. Gen., Richard A. Solomon, Brown & Franklin M. Stone, Gen. Counsel, CAB, John H. Wanner, Assoc. Gen. Counsel; O. D. Ozment, Asst. Gen. Counsel, Morris Chertkov, Monte Lazarus, Ulrich V. Hoffmann, Attys., CAB, Washington, D.C., for Civil Aeronautics Board.
 Paul L. Adams, Atty. Ge., of the State of Michigan, Robert G. Howlett, Spec. Asst. Atty. Gen., Grand Rapids, Mich., for Michigan Department of Aeronautics.
 Before CLARK, Chief Judge, LUMBARD and WATERMAN, Circuit Judges.
 WATERMAN, Circuit Judge.
 
 
 1
 Presented here for our decision are three separted petitions for review of orders of the Civil Aeronautics Board[1] arising out of the 'Great Lakes-Southeast Service Case.'[2] These orders marked the culmination of an extensive hearing[3] on new route applications for service between points in a specified geographic area of the Middle West on the one hand and Florida on the other. The Board's ultimate decision, insofar as pertinent to this opinion, was as follows: Northwest Airlines was awarded a route between Miami and Chicago; the authority of Delta Air Lines was extended so as to permit Miami-Detroit service; and that of Capital Airlines[4] was extended so as to confer upon it authority to render service between Miami and the three cities of Cleveland, Pittsburgh, and Buffalo. Prior to these awards the route between Miami and Chicago was served by both Delta and Eastern Air Lines; Eastern offered the only single-carrier service between Miami and the cities of Detroit, Cleveland and Pittsburgh;[5] and between Miami and Buffalo there was no direct service. Petitioners are as follows: Eastern, which objects to all three awards; Capitol Airways,[6] an unsuccessful applicant for the Miami-Chicago and Miami-Detroit routes, which objects to the Board decision as to these routes; and the City of Nashville, Tennessee, which objects to the fact that the Board drew the geographical boundaries of the 'area proceeding' in such a manner that service to and from Nashville was excluded from consideration.
 
 Eastern
 
 2
 Eastern's primary contention is that the Board has violated the principle of Ashbacker Radio Corp. v. FCC, 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108, in failing to consolidate in this 'Great Lakes-Southeast Service Case' an Eastern application for extension of its route authority from Chicago to Minneapolis/St. Paul so that this extension application would be considered along with the proposals by the other carriers for new service between Chicago and Miami. By its consolidation order E-9734, issued November 16, 1955, the Board eliminated from consideration in the proceeding all applications for service to areas north and west of Chicago. Eastern points out that, under the award here objected to, Northwest, which was previously certificated for service between Minneapolis/St. Paul and Chicago, will now be permitted to conduct direct service between Minneapolis/St. Paul and Miami.[7] Eastern further points out that its application for extension from Chicago to Minneapolis/St. Paul, filed eight years before Northwest's application for Chicago-Miami authority and contemplating exactly the same Miami- Minneapolis/St. Paul service as the Board has here awarded Northwest, was not given simultaneous, comparative consideration. Eastern contends that certification of Northwest for Miami-Minneapolis/St. Paul service will as a matter of economic fact preclude certification of Eastern for that same service. Thus Eastern contends that the Board's procedure has violated the Ashbacker principle.[8]
 
 
 3
 Ashbacker Radio Corp. v. FCC, supra, involved two applications for the construction of radio stations. The stations planned to operate at the same frequency and were located in cities less than fifty miles apart. The Federal Communications Commission found that these two applications as a matter of physical fact were mutually exclusive and thereupon granted one application without hearing and relegated the second to a hearing to be held later. The Supreme Court reversed the Commission, holding, as a matter of statutory construction, that two mutually exclusive applications must be granted a concurrent hearing. Although Ashbacker dealt only with physical exclusivity its doctrine soon found its way into aeronautical law, and was applied to applications for the same routes which were mutually exclusive 'as a matter of economic fact.' Northwest Airlines v. CAB, 1952, 90 U.S.App.D.C. 158, 194 F.2d 339; Delta Air Lines v. CAB, 1955, 97 U.S.App.D.C. 46, 228 F.2d 17. See also Seaboard & Western Airlines, v. CAB, 1949, 86 U.S.App.D.C. 9, 181 F.2d 777; Western Air Lines v. CAB, 9 Cir., 1950, 184 F.2d 545.
 
 
 4
 On the other hand, it also seems clear that although a given award may adversely affect competitors' applications for other routes, this possible adverse effect of itself does not create an Ashbacker situation. Rather mutual exclusivity must be established. In this and other area proceedings, when faced with the protests of carriers who have applied for routes outside the geographic limits of the Board's consolidation order, the Board has adhered to the practice of permitting these carriers to intervene and contest the issue of mutual exclusivity. This procedure was expressly approved in National Airlines v. CAB, 1952, 101 U.S.App.D.C. 345, 249 F.2d 13. It was followed scrupulously in the present case. Eastern was afforded an ample opportunity to present evidence on the issue of exclusivity. It presented none.[9] This failure to make any showing of mutual exclusivity is fatal to Eastern's Ashbacker contentions. The cases which have dealt with this problem clearly suggest that it is incumbent upon the applicant asserting mutual exclusivity to substantiate the claim before the agency. Delta Air Lines v. CAB, supra; National Air Lines v. CAB, supra. We hold that in an area proceeding where an applicant objects to exclusion of his application by a consolidation order, and does not submit evidence in support of his objection, the agency may treat the objection as not having been made.
 
 
 5
 Second, Easter points to three instances that it claims are such departures from orderly administrative procedure as to vitiate the Board's action. Eastern's contentions, which will be discussed in turn, relate to (1) a 'press release' announcing the Board's tentative decision and released six months before the Board's opinion; (2) participation by assistants of Board members at Board meetings in which tentative awards were made; (3) receipt by the Board immediately prior to oral argument of alleged ex parte representations concerning an equipment program commenced by Capital Airlines, the carrier ultimately awarded authority between the cities of Miami and Cleveland, Pittsburgh and Buffalo.
 
 
 6
 Pursuant to a policy begun at some time more than two years ago, the Board, approximately two months after the completion of oral argument, issued a 'press release' announcing the route awards it was granting in the Great Lakes-Southeast Service Case. The press release expressly stated that the announcement of the awards did not constitute decisions in the case but that decisions would be entered and issued later. We construe this language to mean that the announced awards did not constitute final determinations but were tentative only, and that there were to be no definitive awards until the issuance of the Board's formal opinion.[10] The awards conferred by the Board's formal opinion, however, coincided exactly with those announced in the previous press release. Eastern claims that in effect this practice amounts to a prejudgment, in that the opinion, written six months subsequently, represents nothing more than a rationalization of conclusions previously reached; and that, therefore, the opinion is a nullity even if otherwise legally sufficient. We do not mean to express approval of the Board's practice of making public its tentative decisions. We only indicate that Eastern's claim of prejudgment is unsound. Eastern does not contend that the interval between the completion of oral argument and the Board's tentative decision was so short that it precluded thoughtful consideration of the evidence presented. Moreover, if the careful marshaling of facts required in drafting an opinion should have indicated that a different decision was proper, the tentative decision announced in the press release need not have prevented the Board from reaching a different decision. Hence we hold that the press release procedure did not deny Eastern a fair hearing.
 
 
 7
 Eastern objects to two of the Board's subsidiary awards[11] for the reason that at the tentative votes on these awards two assistants to Board members participated in place of their respective superiours.[12] However, leaving aside the fact that these votes were merely tentative, we note that the votes in question were cast only after two days of discussion by the Board when all of its members were present, and that the votes later cast by the assistants were cast in compliance with instructions given by their superiors. Accordingly, we find no improper delegation; and, assuming such right to exist, we find no deprivation of an applicant's right to joint deliberation upon his application by the Board members before vote is had upon it.
 
 
 8
 Eastern contends that the Board must have considered information in its hands relating to an equipment acquisition program announced by Capital three days prior to commencement of oral argument before the Board as bearing upon the issues here, and therefore Eastern was unfairly prejudiced since this information was not part of the record in the case. More specifically, Eastern objects to Capital's wide circulation of a press release relating to the equipment program and, branding this an effort to bring improper pressure upon the Board, Eastern demands that the record be reopened to determine Capital's fitness. In addition, Eastern claims that it was unfairly prejudiced because the manufacturer from whom Capital proposed to purchase its equipment communicated to the Board just prior to the beginning of oral argument the details of the proposed purchase. The Board assures us that the decision to award Capital the Miami-Buffalo, Cleveland, Pittsburgh route was uninfluenced by the announcement of Capital's equipment acquisition program. We have no reason to doubt this representation. The communication to the Board by the manufacturer was not improper, for such information was relevant to Board functions unconnected with the Great Lakes-Southeast Service Case.[13] See Van Curler Broadcasting Corp. v. United States, 1956, 98 U.S.App.D.C. 432, 236 F.2d 727, 730, certiorari denied 352 U.S. 935, 77 S.Ct. 226, 1 L.Ed.2d 163. There is no indication that Capital made any covert communications to members of the Board, and hence the recent case of WKAT v. FCC, 1958, 103 U.S.App.D.C. 324, 258 F.2d 418, is inapposite.
 
 
 9
 Finally, Eastern contends that, as to the following matters, the Board has failed to make appropriate findings or has failed to support its findings with substantial evidentiary findings: inadequacy of existing service; advantages purported to result from competitive authorizations; sufficiency of various markets to support additional carriers; and insubstantiality of Eastern's loss of revenues resulting from new authorizations.
 
 
 10
 As to the first two matters, the recent case of FCC v. RCA Communications, 1953, 346 U.S. 86, 73 S.Ct. 998, 97 L.Ed. 1470, is controlling. The Court there indicated that an agency's determination that competition in and of itself was a desirable objective would be upheld provided that the agency based its determination upon its own expert knowledge of the industry under its control rather than on some general notion of national policy. In the present case the Board did determine that increased competition on air routes was desirable when there was sufficient traffic.[14] Therefore, further findings with respect to inadequancy of service, or benefits to be derived from competition, are unnecessary. We have examined the Board's findings on size of market and diversion and have found these findings adequately stated and supported by substantial evidence.[15] See Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Colorado Wyoming Gas Co. v. FPC, 1945, 324 U.S. 626, 65 S.Ct. 850, 89 L.Ed. 1235.
 
 
 11
 We have examined Eastern's other contentions and have found them to be without merit.
 
 Capitol
 
 12
 As hereinbefore stated, Capitol was an unsuccessful applicant for the Miami-Chicago and Miami-Detroit routes. Capitol's objections to the Board's decision are two: first, the Board failed to make findings concerning Capitol's fitness and the public need for its proposed service; second, the Board erred in allowing additional time at oral argument for statements by Members of Congress, several of whom stated a preference for Northwest, the carrier ultimately selected for the Miami-Chicago route. In connection with the second objection, Capitol has moved that this court appoint a Commissioner or Referee to determine whether Northwest procured the congressional representations, the motion assuming that Northwest initiative in this respect would constitue exertion of undue influence upon the Board by the carrier.
 
 
 13
 Capitol contends that Section 401 of the Civil Aeronautics Act, 49 U.S.C.A. 481, requires that the Board, when it is confronted with a series of competitive applications, make findings as to whether each applicant is fit, willing and able to supply the service applied for, and as to whether the service proposed by each applicant is required by the public convenience and necessity. Capitol relies upon Section 401(d)(1) of the Act, 49 U.S.C.A. 481(d)(1) which reads as follows:[16]
 
 
 14
 '(d)(1) The Board shall issue a certificate authorizing the whole or any part of the transportation covered by the application, if it finds that the applicant is fit, willing, and able to perform such transportation properly, and to conform to the provisions of this chapter and the rules, regulations, and requirements of the Board hereunder, and that such transportation is required by the public convenience and necessity; otherwise such application shall be denied.'
 
 
 15
 As we read this section it refers only to the findings necessary in order to grant a certificate; it does not purport to deal with situations where the Board has decided not to grant the certificate. Courts have previously held that where one of competitive applications is held preferable to the others from the standpoint of public interest, no further findings with respect to the unsuccessful applicants is required. Continental Southern Lines v. CAB, 1952, 90 U.S.App.D.C. 352, 197 F.2d 397, 402-403 certiorari denied 344 U.S. 831, 73 S.Ct. 37, 97 L.Ed. 647; North American Airlines v. CAB, 1957, 100 U.S.App.D.C. 40, 241 F.2d 445, 448. The findings leading the Board to select Northwest and Delta in preference to Capitol are sufficient and are supported by substantial evidence.[17]
 
 
 16
 We find no merit in Capitol's contention that congressional representations at oral argument before the Board in favor of Northwest's application constituted undue influence. We so hold irrespective of whether Northwest actively solicited it. Equally without merit is Capitol's contention that the time consumed in listening to congressional representations denied Capitol equal time with other applicants for oral argument, or that the failure to announce in advance that time would be allotted for congressional statements denied it an opportunity to prepare rebuttal and thereby denied it a fair hearing.
 
 City of Nashville
 
 17
 The City of Nashville, Tennessee contends that the Board erred by excluding from consideration the needs of that city for improved air service. The Board's consolidation order[18] set as the westward limit of the geographic area under consideration a line from Chicago to Indianapolis to Louisville to Atlanta (and ultimately to Miami). Subsequently the westward limit was extended to include Chattanooga, Tennessee and Tallahassee, Florida. Nashville lies to the west of this westward limit as amended, and accordingly its service needs were not considered. We do not find that the geographic limits established by the Board were arbitrary or unreasonable, since we must always have in mind the need to keep the hearing within manageable proportions.[19] We find no error here.
 
 
 18
 Therefore, insofar as the Board's action is challenged by the petitions of Eastern, Capitol, and the City of Nashville, it is affirmed. Capitol's motion to refer certain matters to a Referee or Commissioner is denied.
 
 
 
 [1]
 The orders are E-13024, the Board's formal opinion in the Great Lakes-Southeast Service Case, rendered on September 30, 1958, and E-13211, entitled 'Opinion and Order Granting and Denying Stay of Effective Date of Certificates,' rendered November 28, 1958. In view of our disposition of the contentions herein we need not decide whether the second order was effective to supplement the formal opinion, but see Frontier Airlines v. CAB, 1958, 104 U.S.App.D.C. 78, 259 F.2d 808, 810-811
 
 
 [2]
 Applications for new route certification are normally decided by the Board in a consolidated 'area proceeding.' The Board establishes a given geographic area. Thereupon all applications for routes within this area are considered jointly. This Board procedure was approved by the Supreme Court in Civil Aeronautics Board v. State Airlines, 1950, 338 U.S. 572, 70 S.Ct. 379, 94 L.Ed. 353
 
 
 [3]
 Some idea of the breadth and complexity of the investigation can be obtained from the following statistics. There were 42 route applications, made by 10 carrier applicants. There were 5 carrier intervenors, 40 civic intervenors, and 42 limited participants. The record consists of 29 volumes totaling 16,000 pages. The evidentiary hearing lasted 8 weeks. The Initial Decision covered 378 pages. The two orders here objected to consist of a modest 88 pages
 
 
 [4]
 Capital Airlines is not to be confused with Capitol Airways, a petitioner herein. Capital is a certificated carrier whose routes cover much of the eastern half of the country
 
 
 [5]
 The Board has authorized 'interchange' arrangments between Miami and these cities, providng for single-plane service over the routes of two airlines. From the briefs we gather that these arrangements have not been particularly successful
 
 
 [6]
 Capitol is an uncertificated carrier operating under a Board exemption. Its principal business has consisted of performing charter services for the military. For one year, ending July 1955, it conducted scheduled passenger operations within the State of Tennessee
 
 
 [7]
 Pursuant to the Board's consolidation order which denied any successful applicant the right to conduct nonstop flights between 'beyond area cities' and points newly authorized in the proceeding, Northwest's flights between Minneapolis/St. Paul and Miami must stop at Chicago. The Board denied Eastern's demand that single-plane flights also be prohibited
 
 
 [8]
 Eastern's Ashbacker argument in the Great Lakes-Southeast Service Case has been before the courts once previously. Eastern petitioned the Court of Appeals for the District of Columbia to review the Board's consolidation order. The petition was dismissed, Eastern Air Lines v. CAB, 1956, 100 U.S.App.D.C. 184, 243 F.2d 607 on the theory that a consolidation order was not a 'final order' for purposes of judicial review. Having dismissed the petition the court went on to suggest that the Ashbacker doctrine was inapplicable to large-scale, multi-application area proceedings. Eastern quite rightly contends that this decision is not res judicata in the present case; and, deciding the case as we do, we need not consider the possible inapplicability of Ashbacker
 
 
 [9]
 At the hearing before the examiner Eastern requested that the applicants for the Chicago-Miami route be compelled to produce data on the percentage of occupancy on some of the applicants' flights. The request was denied. Before the Board Eastern argued that this 'load factor' data was relevant to mutual exclusivity. However, before the examiner Easter argued only that this evidence was relevant to the ability of these applicants to improve upon Eastern service, or, in the alternative, to the inadequacy of load factor data as evidence in determining the caliber of existing service
 
 
 [10]
 The Board's explanation of its press release procedure is enlightening. Because of the complexity of the data presented to it in an area proceeding (see footnote 3, supra) the Board has found it necessary to make a preliminary, tentative decision, then to draft an opinion based upon it, and thereafter to take a further and perhaps final vote to accept or reject the decision embodied in the proposed opinion. Prior to the adoption of the press release procedure, the Board says that news of the Board's tentative decision seemed invariably to 'leak' to interested outside persons. The stated purpose of the press release, therefore, is to make this information uniformly available to the general public and is an admission by the Board that 'leaks' do occur and that the Board is powerless to prevent them
 
 
 [11]
 These were an award to United to serve Columbus and Dayton on Washington-Chicago flights, and one removing from Northwest all restrictions on that carrier's Washington-Pittsburgh-Cleveland-Detroit route. Eastern had applied for each of the routes which these votes awarded to other carriers
 
 
 [12]
 The award to United was by vote of 4-0, one vote being cast by an assistant. The vote with respect to Northwest was 4-0, two votes being cast by assistants
 
 
 [13]
 Equipment acquisition programs are relevant to a carrier's needs for additional revenue. At the time of the communication to the Board, the Board was conducting a comprehensive investigation of passenger fares. Second, a change in the ownership of Capital, a matter calling for Board approval under Sec. 408 of the Civil Aeronautics Act, 49 U.S.C.A. 488, could possibly result from the financing provisions of the proposed equipment acquisition program
 
 
 [14]
 'The Board in the past has recognized the benefits which accrue to the public from stiff multi-carrier competition in major traffic markets in the form of improved quality and quantity of service, increased coach service, utilization of the most modern equipment, etc. We believe that the authorization of a third Chicago-Miami carrier will bring comparable benefits here. We do not find that the services Delta and Eastern have provided are legally inadequate in terms of section 404 (a) of the Act. However, we find that the Chicago-Miami market is sufficiently large now and has the inherent potential to support three carriers on an economic basis, and that the public interest will be served by certificating a third carrier.' Great Lakes-Southeast Service Case, E-13024 (R. 15222)
 
 
 [15]
 We note further that Eastern introduced no evidence on the issue of diversion, thus failing to sustain the burden requred under Clarke v. United States, D.C.D.C.1951, 101 F.Supp. 587, 594
 
 
 [16]
 The parties agree that the applicability of the Civil Aeronautics Act to this case is unaffected by its repeal and replacement by the Federal Aviation Act of 1958, 49 U.S.C.A. 1301 et seq
 
 
 [17]
 Capitol seems to suggest that American Airlines v. CAB, 1956, 98 U.S.App.D.C. 348, 235 F.2d 845, certiorari denied Air Coach Transport Ass'n v. American Airlines Inc., 353 U.S. 905, 77 S.Ct. 668, 1 L.Ed.2d 666, and Pan American World Airways v. CAB, 1958, 104 U.S.App.D.C. 288, 261 F.2d 754, certiorari denied 359 U.S. 912, 79 S.Ct. 590, 3 L.Ed.2d 575, have enunciated a more exacting standard for administrative findings of fact. These case are not applicable here. They merely hold that where the Board permits air operations by exemption under 416(b), 49 U.S.C.A. 496(b), rather than by the more rigorous procedure of certification under 401, 49 U.S.C.A. 481, the Board must give reasons for this short-cut by findings more specific than a mere echoing of statutory language
 
 
 [18]
 Order No. E-9734, issued November 16, 1955
 
 
 [19]
 See note 3, supra