### ZENITH RADIO CORP.
v.
### FEDERAL COMMUNICATIONS COMMISSION et al.
No. 11772.

United States Court of Appeals
District of Columbia Circuit.
Argued Dec. 21, 1953.
Decided Jan. 21, 1954.

---

[1]. D.C.Code § 23–301 (1951).

Mr. Edward K. Wheeler, Washington, D. C., with whom Mr. Joseph S. Wright, Washington, D. C., was on the brief, for appellant. Mr. Burton K. Wheeler, Washington, D. C., entered an appearance for appellant.

Mr. J. Roger Wollenberg, Asst. Gen. Counsel, Washington, D. C., with whom Mr. Richard A. Solomon, Acting General Counsel, Washington, D. C., was on the brief, for appellee. Mr. Benedict P. Cottone, General Counsel at the time the record was filed, Washington, D. C., entered an appearance for appellee.

Mr. Samuel I. Rosenman, New York City, of the Bar of the Supreme Court of New York, *pro hac vice,* by special leave of Court, with whom Messrs. Max Freund, New York City, and Stanley M. Silverberg and Leon R. Brooks, Washington, D. C., were on the brief, for intervenor Columbia Broadcasting System, Inc. Mr. Frederic P. Lee, Washington, D. C., entered an appearance for Columbia Broadcasting System, Inc.

Messrs. D. M. Patrick and Parker D. Hancock, Washington, D. C., entered appearances for intervenor The Journal Company.

Messrs. John P. Carr and Thomas H. Wall, Washington, D. C., and Alfred C. Cordon, Jr., Pocatello, Idaho, entered appearances for intervenors Fetzer Broadcasting Company and Rock Island Broadcasting Company.

Before PRETTYMAN, BAZELON and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal [1] from an order of the Federal Communications Commission denying an application of appellant for a permit to construct a commercial television broadcasting station to operate on Channel 2 in Chicago, Illinois. The facts are complicated and confusing, but the burden of appellant's case is that its application for a license was denied without a hearing. The Commission admits appellant's statutory right to a hearing but says appellant waived the right.

On February 16, 1948, Zenith filed an application for a construction permit to operate commercially on Channel 2. It had a license for an experimental station on Channel 2, but there was then no commercial operation on that channel. At that time Balaban & Katz Corporation was operating under a commercial license on Channel 4.

During 1948 the Commission determined to reexamine the whole pattern of television operation in the country. This study of the country-wide television situation was given captions and docket numbers. It was a proposed rule-making.[2] On September 30, 1948, the Commission entered what is called a "freeze order", in which it suspended the issuance of commercial television permits pending the outcome of its study. On March 21, 1951, the Commission issued in those proceedings and under those docket numbers an order, which is called "Third Notice of Further Proposed Rule Making". Among other things the Commission proposed to amend its rules and regulations and its standards of engineering practice in accordance with a table of television channel allocations, attached to the Notice as Appendix C. The table involved alteration of existing television authorizations in thirty-one instances. In respect to Chicago the table proposed VHF Channels Nos. 2, 5, 7 and 9. The table did not list Channel 4 for Chicago and thus in effect proposed the deletion of that channel. This Third Notice also included (as paragraph 8) a table which, the Notice said, contained the names of licensees who then held licenses and the channel which the Commission proposed to substitute for the existing channel in each instance of change. In respect to Chicago this table showed Balaban & Katz Corporation with its "Present channel assignment" as Channel 4 and its "Proposed channel assignment" as Channel 2. The Notice continued that if the proposals set forth in Appendix C were adopted it was proposed to modify the licenses held by the licensees listed in paragraph 8 so as to substitute the proposed channels in place of their existing assignments. "Accordingly," said the Notice, "the licensees and permittees listed in paragraph 8 above are directed to show cause in these proceedings and in accordance with the procedures hereinafter set forth why their licenses and permits should not be modified as set forth in paragraph 8 above". This part of the Notice is referred to in this litigation as the show cause order. The Third Notice further provided that on or before April 23, 1951, any interested person who was of the opinion that the proposals in Appendix C should not be adopted could file written comments, but that such comments must be accompanied by supporting engineering statements. It further provided that on or before May 8, 1951, interested persons might submit written comments in opposition to comments filed with respect to the proposals.

The Third Notice also provided that persons who were contemplating filing amendments to pending applications for television stations "are requested to postpone the filing of such applications or amendments pending a final determination on the rules, standards and assignments proposed in this proceeding." It also said: "Applicants are requested to comply with this paragraph in order to eliminate unnecessary administrative ef-

1. Section 402(b) and (c), Communications Act of 1934, 48 Stat. 1093, as amended, 47 U.S.C.A. § 402(b) and (c).

2. 13 Fed.Reg. 2629.

fort and to save themselves the possibly needless expense of preparing and filing applications and amendments which may not be in conformity with the rules, standards and assignments as finally adopted."

Balaban & Katz Corporation, responding to the show cause order, i. e., to that part of the Third Notice, advised that it had no objection to the suggested change. Zenith Radio Corporation did not intervene or otherwise enter these proceedings; it did not file any comment. However, on July 24, 1951, which was after the time allowed for filing comments, Zenith filed with the Commission a paper under the docket numbers of the proceedings and captioned in the titles of the proceedings, which it said was for the purpose of recording its understanding of the Third Notice, particularly as it affected Channel 2 in Chicago. Zenith said that it understood that the proceedings did not involve the assignment of any allocations to specific persons. It said that it had no objection to the proposal to allocate Channel 2 to Chicago, but it said that, if the Third Notice was considered to assign Channel 2 to Balaban & Katz Corporation or to create any preferential rights in Balaban & Katz to such channel, it (Zenith) prayed that it be so advised. On August 3, 1951, the Columbia Broadcasting System, Inc., filed in the same proceedings and under the same docket numbers what it entitled "Opposition to Pleading of Zenith Radio Corporation". Columbia said that it had pending before the Commission an application for assignment to it of the Balaban & Katz license. It took the position that in the Third Notice the Commission proposed to modify the Balaban & Katz license so that it would operate on Channel 2 instead of Channel 4, that this modification was made on the Commission's own motion, and that, accordingly, a comparative hearing for Channel 2 facilities was not required.

On April 11, 1952, the same day upon which the Commission issued in these proceedings its so-called "Sixth Report and Order", which we will discuss in a moment, the Commission filed a memorandum opinion and order respecting the pleading filed by Zenith. It said that this pleading amounted to a petition for a declaratory ruling; that, as pointed out in the opinion and order being filed on the same day in the Peoples Broadcasting Company case, all applications theretofore filed must be amended; and that therefore no determination on the merits was being made and the Zenith petition would be considered moot. The Commission continued: "In the event that Zenith amends its application in accordance with the rules and regulations adopted in the Sixth Report and Order, and continues to seek Channel 2 in Chicago, it may at that time again raise the question of its status, and the status of Balaban & Katz Corporation, with respect to that channel." Accordingly the Commission ordered "that the pleading filed by Zenith Radio Corporation on July 24, 1951 be, and it is hereby, Dismissed."

As we have just indicated, on April 11, 1952, the Commission, in these same proceedings and under the same docket numbers, issued its Sixth Report and Order. This Report described at length the proceedings theretofore had, which, it noted, had been instituted by a "Notice of Proposed Rule Making". The proposals which had been contained in the Third Notice and the comments thereon were discussed. The pendency of an application of Balaban & Katz for the renewal of its license was noted, as was the fact that that application had been designated for hearing. The Order recited that an appropriate temporary authorization would be issued to "the licensee of Station WBKB" (the Balaban & Katz station) in order to permit operation on Channel 2 instead of Channel 4. The assignments of Channels 2, 5, 7 and 9 to Chicago were adopted.

On May 29, 1952, after the Sixth Report had been filed, Zenith filed another petition for a declaratory ruling, in the same proceedings and under the same docket numbers. It called attention to the pending applications for operation on Channel 2 and insisted that before any

license for Channel 2 could be issued a comparative hearing was required, which hearing would include Balaban & Katz Corporation if a license to that Corporation for Channel 2 was to be considered. Columbia Broadcasting System, Inc., filed in the same proceedings and under the same docket numbers an opposition to the petition of Zenith.

On the same day that Zenith filed the foregoing petition for declaratory judgment, that is, on May 29, 1952, it filed an amended application, on the form required by the new rules, for a construction permit for a commercial television station on Channel 2 in Chicago.

On June 16, 1952, Balaban & Katz filed an application for a license on Channel 2. Zenith promptly filed, under the title "In re Application of Balaban & Katz Corporation", a petition for a comparative hearing. Columbia Broadcasting System, Inc., filed an opposition to Zenith's petition. On October 15, 1952, Balaban & Katz requested dismissal of its application without prejudice, and its request was granted. On November 24, 1952, Zenith requested a special temporary authorization to commence commercial operation on Channel 2. This request was opposed by Balaban & Katz Corporation and by Columbia Broadcasting System, Inc.

Thus, as of the end of 1952, there were pending before the Commission: (1) the proceedings, which were rule-making proceedings, in which the Third Notice, the Sixth Order, and the other papers hereinabove described had been filed; (2) the application of Balaban & Katz for a renewal of its license for Station WBKB on Channel 4, the examiner having issued an initial decision proposing to grant the renewal; (3) the application for a transfer of Station WBKB to Columbia Broadcasting System, Inc.; and (4) Zenith's original (1948) and amended applications for a construction

permit for commercial operation on Channel 2.

On February 9, 1953, the Commission issued the memorandum opinion and order which is contested in this appeal. This was filed in the same proceedings and under the same docket numbers as were the Third Notice and the Sixth Order, with, however, an additional title reading "and Application of Zenith Radio Corporation, Chicago, Illinois—For Construction Permit for a new Television Station—File No. BPCT–322". In this order the Commission said, "The show cause order directing the modification of license of WBKB to operate on Channel 2 in lieu of Channel 4 is finalized", and it dismissed the applications of Zenith for a construction permit and for temporary authorization. Three Commissioners dissented. Zenith petitioned for reconsideration, and that petition was denied. Zenith thereupon filed this appeal. Meantime, simultaneously with the order just described, the Commission, in another order, granted the application of Balaban & Katz for a renewal of its license "on Channel 4" and approved the transfer of the station to the Columbia Broadcasting System. No appeal was taken from that order.

Throughout all the foregoing proceedings Zenith's application for commercial operation on Channel 2 in Chicago was pending. Under the statute it was entitled to a hearing on that application.[3] The problem, as we stated at the beginning of this opinion, is whether Zenith waived that right. We cannot find a waiver in this record.

 It is said that Zenith waived its right when it failed to intervene in the rule-making proceedings in which the Third Notice, the Sixth Report, and other events transpired. But, in the first place, we think the Commission cannot by general public notices in a rule-making proceeding compel a person with an established statutory right to protect that

3. Section 309 of the Communications Act, 48 Stat. 1085 (1934), as amended, 47 U.S. C.A. § 309 ; Ashbacker Radio Co. v. Federal Communications Comm., 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 ; Northwest Airlines v. Civil Aeronautics Board, 1952, 90 U.S.App.D.C. 158, 194 F.2d 339.

right, against penalty of forfeiture, by entering the rule-making proceeding. Such an established statutory right requires adjudicatory disposition, and the procedure which is sufficient for rule-making is not sufficient for that purpose. In the second place, Zenith says that it had no material interest in the rule-making proceedings, in that it did not object to the deletion of Channel 4 from the Chicago area and it did not object to the proposal that Balaban & Katz be placed in the position of an applicant for Channel 2. Its sole interest, it says, was that the proposal to issue Balaban & Katz a license on Channel 2 and its (Zenith's) application for a license on Channel 2 be set for a comparative hearing. These positions seem to us to be well taken, at least to the extent that they negative an inference of a waiver. In the third place, whatever else may be said about Zenith's pleadings of July 24, 1951, and May 29, 1952, in the rule-making proceedings, they were at least contradictory to waiver. Zenith did not attempt to intervene as a party, but its "pleadings" were filed in the proceedings, they were opposed in the proceedings, and they were disposed of by formal orders entered in the proceedings. It is also to be noted that, when Balaban & Katz filed an application for a license on Channel 2, Zenith promptly filed a petition for a comparative hearing.

It is said that Zenith waived its right when it failed to intervene in the proceeding involving the renewal of the Balaban & Katz license on Channel 4 and the transfer of the Channel 4 station to Columbia Broadcasting. Zenith says that it had no interest in those proceedings, that it had no interest in Channel 4 and did not care who owned Station WBKB as a station. Its interest was that it should have a comparative hearing with any other proposed licensee on Channel 2. Zenith probably had a right to intervene as a party in the rule-making proceedings and also in the renewal and transfer proceedings. But we are not concerned with its right to intervene; our question is whether it was required to intervene in them. For reasons which appealed to it, and with which we have no concern, Zenith chose to stand upon its statutory right to a hearing. No good reason why it should not do so appears, and we think a waiver of that right would have to be clear and intentional.

We conclude, therefore, that Zenith was, and is now, entitled to a comparative hearing with other applicants and proposed licensees on Channel 2 in Chicago upon the problem as to which one should be awarded a license for commercial operation on that channel.

While we are of opinion that Zenith is entitled to a comparative hearing, we are also of the opinion that the facts concerning the interest of Columbia Broadcasting System, Inc., in the situation cannot be ignored. In the first place, it was well known, at least as early as July, 1951, that Columbia was seeking a transfer of Station WBKB and the ownership of whatever license would be issued for that station. If a comparative hearing had been had at that time between Zenith and Balaban & Katz, both parties would have been entitled to present their plans for the future, including proposed programs, proposed staff, proposed financing, etc. Balaban & Katz would have been entitled to establish that if it were awarded the license it would join in an application for a transfer of it to the Columbia Broadcasting System. Columbia would have had sufficient interest in the matter to permit it to intervene.

Furthermore it seems to us that the general doctrine of the West Ohio Gas case [4] is applicable. In that case the Supreme Court held that when a regulatory agency is determining a question for a period already past, rather than the customary determination governing the future, it cannot ignore facts

4. West Ohio Gas Co. v. Public Utilities Comm. (No. 2), 1935, 294 U.S. 79, 82, 55 S.Ct. 324, 79 L.Ed. 773. See also Summerfield v. Civil Aeronautics Board, 1953, 92 U.S.App.D.C. 248, 207 F.2d 200.

which have actually transpired. Therefore, in any comparative hearing which the Commission may now hold between Zenith and Balaban & Katz, it cannot ignore the fact that it has approved the transfer of Station WBKB to Columbia Broadcasting System, Inc. Its order in that respect was not appealed and has become final. Whatever is left to Station WBKB after the hearing concerning the license, whether that station is authorized to operate on Channel 2 or is left without any authorization at all, belongs to the Columbia Broadcasting System. The comparative hearing, therefore, between Zenith and Balaban & Katz must actually be a comparison between operation by Zenith and operation by the Columbia Broadcasting System.

The order of the Commission is reversed and the case remanded to the Commission for further proceedings in accordance with this opinion.

Reversed and remanded.