308 F.2d 339
 113 U.S.App.D.C. 384, 46 P.U.R.3d 288
 TRANSCONTINENT TELEVISION CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee.
TRANSCONTINENT TELEVISION CORPORATION, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, Shasta Telecasting
Corporation, Intervenor.
TRANSCONTINENT TELEVISION CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Kern County
Broadcasting Company and Shasta Telecasting
Corporation, Intervenors.
TRANSCONTINENT TELEVISION CORPORATION, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, Kern County Broadcasting
Company and Shasta Telecasting
Corporation, Intervenors.
 Nos. 16540, 16541, 16684, 16685.
 United States Court of Appeals District of Columbia Circuit.
 Argued June 1, 1962.
Decided July 19, 1962, Petition for Rehearing Denied Oct. 11, 1962.
 
 Mr. Ernest W. Jennes, Washington, D.C., with whom Messrs. John W. Douglas and Herbert Dym, Washington, D.C., were on the brief, for appellant in Nos. 16540 and 16684 and petitioner in Nos. 16541 and 16685. Mr. Edgar F. Czarra, Jr., also entered an appearance for appellant in Nos. 16540 and 16684 and petitioner in Nos. 16541 and 16685.
 Mr. Daniel R. Ohlbaum, Asst. Gen. Counsel, F.C.C., with whom Mr. Max D. Paglin, Gen. Counsel, Mrs. Ruth V. Reel, Counsel, F.C.C., and Mr. Richard A. Solomon, Atty., Dept. of Justice, at the time the brief was filed, were on the brief, for respondents. Mr. Lionel Kestenbaum, Atty., Dept. of Justice, also entered an appearance for respondent United States in Nos. 16541 and 16685.
 Mr. James E. Greeley, Washington, D.C., with whom Mr. John G. Smith, Washington, D.C., was on the brief for intervenor Shasta Telecasting Corp.
 Mr. J. Roger Wollenberg, Washington, D.C., with whom Messrs. Andrew G. Haley and Michael H. Bader, Washington, D.C., were on the brief, for intervenor Kern County Broadcasting Co.
 Before BAZELON, FAHY and BASTIAN, Circuit Judges.
 FAHY, Circuit Judge.
 
 
 1
 Appellant-petitioner, whose designation of itself as Marietta we adopt in this opinion,[1] operates under license from the Federal Communicaions Commission a VHF television station, KERO-TV, on channel 10 in Bakersfield, California. On June 27, 1960, the Commission issued a notice of proposed rule making to determine whether the public interest would be served by amending section 3.606[2] of its rules and deleting channel 10 from Bankersfield and providing two additional UHF channels to supplement the three existing UHF channels assigned to that city. This would achieve deintermixture of the combined UHF-VHF assignments.[3] The notice also contained proposals for the use of channel 10 if the deletion referred to were found to be in the public interest. Comments, reply comments and alternative proposals were filed by various interested parties, including Marietta. This proceeding culminated, on March 27, 1961, in the Commission's Report and Order in Docket No. 13608, in which it found inter alia that the public interest would be served by making all television assignments at Bakersfield in the UHF band. The Commission ordered its Table of Assignments amended by substituting UHF channel 23 for channel 10 at Bakersfield, effective either on December 1, 1962, the expiration date of Marietta's current license, or on such earlier date as the station should cease operations on channel 10. The order also assigned UHF channel 51 to Bakersfield.
 
 
 2
 On June 27, 1960, the Commission also issued an order directing Marietta to show cause why its license should not be modified to authorize operation on one or the other of two UHF channels should the Commission decide to make Bankersfield all UHF. Marietta requested a hearing pursuant to sections 303(f) and 316 of the Communications Act[4] should the Commission undertake to modify its license. The Commission, on March 27, 1961, simultaneously with its Report and Order in the rule making proceedings ordered a hearing to determine whether to modify Marietta's license to specify operation of its Station KERO-TV on channel 23, effective at the earliest practicable date prior to expiration of its license on December 1, 1962. After some further proceedings, however, the Commission, on March 27, 1962, terminated the show cause proceedings without a decision on the merits.
 
 
 3
 Marietta's petition for reconsideration of the decision in the rule making proceeding was denied. Since we review the action of the Commission in that proceeding in appeal No. 16685, the appeal in No. 16684, which seeks review of the same action, is dismissed. And since appeals Nos. 16540 and 16541 involve the show cause proceedings which were terminated without a decision on their merits, those appeals are also dismissed. They present nothing for our review which may not be disposed of on the appeal in No. 16685.
 
 
 4
 Marietta contends that the deletion of channel 10 was a modification of its license which was unlawful because not preceded by a public evidentiary hearing, citing with special emphasis section 316(a) of the Communications Act, which provides:
 
 
 5
 'Any station license * * * may be modified by the Commission either for a limited time of for the duration of the term thereof * * *. No such order of Modification shall become final until the holder of the license * * * shall have been given reasonable opportunity * * * to show cause by public hearing, if requested, why such order of modification should not issue.'[5]
 
 
 6
 The Commission contends that it did not modify Marietta's license since the deletion of channel 10 was not to become effective during the prescribed term of the license. No explicit provision covers the situtation thus presented. We must seek a solution in the light to be drawn from the four corners of the Act and the decisions construing it.
 
 
 7
 Some significance favorable to the position of the Commission must be attached to provisions of the Act (1) indicative of an unwillingness on the part of Congress to permit a broadcasting license for a term in excess of three years,[6] (2) that no license shall be construed to create any right beyond its terms, conditions, and periods,[7] (3) that the applicant shall waive any claim to the use of any particular frequency 'becuase of the previous use of the same, whether by license or otherwise,'[8] and (4) that 'the station license shall not vest in the licensee any right to operate the station nor nay right in the use of the frequencise designated in the license beyond the term thereof * * *.'[9]
 
 
 8
 Marietta, on its part, also relies on provisions of the Act, namely, (1) section 316(a), already referred to, that a modification of a license during its term shall not become final until the holder of the license shall have a reasonable opportunity to show cause by public hearing, if requested, why the order of modification should not issue; (2) section 303(f)[10] that changes in frequencies shall not be made without the consent of the station licensee unless, after a public hearing, the Commission shall determine that such changes will promote the public interest or further complicance with the provisions of the Act, and (3) section 9(b) of the Administrative Procedure Act,[11] read with section 307(d)[12] of the Communications Act, to the effect that when a licensee, in accordance with agency rules, had made timely and sufficient application for a renewal, no license which authorizes any activity of a continuing nature shall expire until such application nature shall have been finally determined by the agency.
 
 
 9
 Turning now to judicial decisions, the power of the Commission to allocate television channels or to modify existing allocations by rule making rather than by adjudicatory proceedings has been upheld. Logansport Broadcasting Corp. v. United States, 93 U.S.App.D.C. 342, 210 F.2d 24. And see Springfield Television Broadcasting Corp. v. Federal Communications Comm'n 104 U.S.App.D.C. 13, 259 F.2d 170, cert. deined, 358 U.S. 930, 79 S.Ct. 316, 3 L.Ed.2d 303; Van Curler Broadcasting Corp. v. United States, 98 U.S.App.D.C. 432, 236 F.2d 727, cert. Denied, 352 U.S. 935, 77 S.Ct. 226, 1 L.Ed.2d 163; Coastal Bend Television Co. v. Federal Communications Comm'n, 98 U.S.App.D.C. 251, 234 F.2d 686. These cases, however, differ from Marietta's in the respect that here the deletion was at a location where Marietta was operating on the channel which was ordered to be deleted; whereas a comparable situation did not exist in the cases cited. Moreover, Marietta claims to come within decisions which have required a full evidentiary hearing, citing Federal Communications Comm'n v. National Broadcasting Co., (KOA), 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374; L. B. Wilson, Inc. v. Federal Communications Comm'n, 83 U.S.App.D.C. 176, 170 F.2d 793, and Zenith Radio Corp. v. Federal Communications Comm'n, 93 U.S.App.D.C. 284, 211 F.2d 629. We shall hereinafter refer to these cases.
 
 
 10
 We recognize the persuasiveness of Marietta's arguments but conclude they should not prevail. In determining whether the deletion of channel 10, effective at the end of the term of Marietta's license, is a 'modification' of the license within the meaning of the term as used in section 316(a), we consider the problem in the setting of the full context of the section and of the Act.
 
 
 11
 'The decisions of this Court have repeatedly warned against the dangers of an approach to statutory construction which confines itself to the bare words of a statute, e.g., (Rector, etc.,) Church of the Holy Trinity v. United States, 143 U.S. 457, 459-462 (12 S.Ct. 511, 36 L.Ed. 226); Markham v. Cabell, 326 U.S. 404, 409, 66 S.Ct. 193, 195, 93 L.Ed. 165, for 'literalness may strangle meaning.' Utah Junk Co. v. Porter, 328 U.S. 39, 44 (66 S.Ct. 889, 90 L.Ed. 1071).' Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211. And see United States v. Storer Broadcasting Co., 351 U.S. 192, 203, 76 S.Ct. 763, 100 L.Ed. 1081.
 
 
 12
 We construe section 316(a) as having reference to a modification which interferes with rights of a licensee during the term of its license. In doing so we bear in mind that we are concerned here only with the type of hearing required, not with the right to a hearing. The latter is conceded. Marietta was heard, though in accordance with rule making procedures. The Commission having considered and decided the deintermixture issue in the rule making proceedings should not be required to cover again the same ground. Cf. Gerico Inv. Co. v. Federal Communications Comm'n, 103 U.S.App.D.C. 141, 143, 255 F.2d 893, 895. We think we would go beyond a reasonable construction of the Act were we to hold that Marietta was entitled to insist upon a different sort of hearing than it was accorded.
 
 
 13
 A contrary view is not required by the provisions of section 303(f), above referred to, regarding changes in frequencies. In this connection Marietta relies upon three 1931 decisions of this court. Saltzman v. Stromberg-Carlson Tel. Mfg. Co., 60 App.D.C. 31, 46 F.2d 612; Courier-Journal Co. v. Federal Radio Comm'n, 60 App.D.C. 33, 46 F.2d 614; Westing-house Elec. & Mfg. Co. v. Federal Radio Comm'n, 60 App.D.C. 53, 47 F.2d 415. These cases, however, are not apposite. Initially we observe that they were decided before the enactment of the Adiministrative Procedure Act which authorized agency rule making procedures.[13] Furthermore, in each case the Federal Radio Commission had ordered the transfer of certain frequencies without any prior notice or opportunity for a hearing to the licensees affected, although a hearing subsequent to the effective date of the orders was offered. In Saltzman the court was concerned that the order of the Commission rested upon 'ex parte findings and conclusions, formulated in the absence of the applicant and based upon evidence undisclosed to him.' It was thought that this would impose upon the applicant in the subsequent proceeding 'the burden of refuting a case resting upon evidence and considerations of which he could have no knowledge.' 60 App.D.C. at 33, 46 F.2d at 614. Marietta was not comparably denied notice and opportunity to be heard. We think section 303(f) in barring changes in frequency without consent of the station licensee or a public hearing does not bar deletion by rule making of a channel, the deletion not to be effective during the term of the license.
 
 
 14
 This leaves the contention based on the provisions of section 9(b) of the Administrative Procedure Act and section 307(d) of the Communications Act, permitting, upon application, renewal of a license upon its expiration. Marietta contends this gives it a right to apply for renewal, that in event of such an application its license is kept in effect pending disposition of its application, that the deletion of channel 10 effective at the expiration of its license cuts off these rights, thus modifying its license, which, to be valid, requires the evidentiary hearing it has been denied.[14] Reliance is placed upon the principle that a license is modified by any action which deprives the licensee of a right guaranteed by law, though the right is not specifically set forth in the language of the license, citing Federal Communications Comm'n v. National Broadcasting Co., (KOA), supra. It was there held that electrical interference by a new station which would deprive an existing licensee of its clear channel would constitute a modification. Support is also sought from our cases of L. B. Wilson, Inc. v. Federal Communications Comm'n, supra; and Zenith Radio Corp. v. Federal Communications Comm'n, supra. The former also was concerned with a modification by interference. In the latter the essence of the holding in the complicated situation presented was that the right to a hearing on an application for a construction permit on a specified channel had not been waived by failure of the applicant to intervene in a rule making proceeding which proposed an allocation which would make that channel available, and in which another applicant had participated. None of these cases requires acceptance of Marietta's contention that by ordering deletion of channel 10 at the expiration of its license the Commission has modified Marietta's license by denying it the right to apply for a renewal, to have a hearing thereon, and to obtain an automatic extension pending disposition of the renewal application. These rights assume the continued availability of the channel. This court has heretofore approved action of the Commission dismissing an application without a hearing where the frequency had been made unavailable by rule amendment. Bendix Aviation Corp., Bendix Radio Division v. Federal Communications Comm'n, 106 U.S.App.D.C. 304, 272 F.2d 533, cert. denied Aeronautical Radio, Inc., v. United States, 361 U.S. 965, 80 S.Ct. 593, 4 L.Ed.2d 545, where it was sated:
 
 
 15
 'we conclude the Commission's action (failure to hold a hearing) was not in derogation of the Act * * * for (the) frequency * * * simply was no longer available for any such purpose as was disclosed by the * * * application.' 106 U.S.App.D.C. at 308, 272 F.2d at 537.
 
 
 16
 Marietta seeks support for its contention last above discussed by pointing to the provisions of section 309(e),[15] requiring an evidentiary hearing before a renewal application is denied. But, as we have said, Marietta's application for renewal would be for a channel which would no longer be available. The loss of such rights as ordinarily pertain to a renewal application is not a modification of a license when the loss is due to the elimination of the channel in a proceeding valid for the type of Commission action which resulted in the elimination. The right of the Commission in the public interest by rule making to delete a channel under its program of deintermixture must be reconciled in a reasonable manner with whatever rights pertain to a station in Marietta's situation. Such reconciliation permits the Commission to construe a 'modification' which requires a full evidentiary hearing as not including the deletion of a channel effective at the end of the stated term of the existing license. This is a reasonable construction of the Act considering all its various pertinent provisions. The holdover provisions, in other words, have the purpose of permitting continuity of operation while a renewal application is being processed, but this assumes the continued availability of the channel. And continued availability, under the scheme of the Act as a whole, is subject to action of the Commission in a rule making proceeding. There would seem to be no necessity to except a station which is operating upon the channel, when the effective date of the decision is postponed until the end of the license term.
 
 
 17
 The procedure followed by the Commission being valid we do not disturb the decision deleting channel 10 from Bakersfield. The contention of Marietta that for reasons other than procedural the decision is arbitrary, capricious, in violation of statutory standards, or otherwise invalid, we think is not sustained on the record.
 
 
 18
 Nos. 16684, 16540 and 16541 dismissed.
 
 
 19
 No. 16685 affirmed.
 
 
 
 [1]
 Marietta Broadcasting, Inc., formerly the wholly-owned subsidiary of Transcontinent Television Corporation, has become merged into the latter. By court order of January 22, 1962, Transcontinent was substituted for Marietta in these appeals
 
 
 [2]
 This section comprises the Commission's Table of Television Channel Assignments. See 47 C.F.R. 3.606 (Supp.1962)
 
 
 [3]
 Marietta's channel 10 is the only VHF channel presently licensed to operate in the Bakersfield area
 
 
 [4]
 48 Stat. 1064 (1934), as amended, 47 U.S.C. 303(f), 316 (1958), 47 U.S.C.A. 303(f), 316
 
 
 [5]
 48 Stat. 1088 (1934), as amended, 47 U.S.C. 316(a) (1958), 47 U.S.C.A. 316(a)
 
 
 [6]
 48 Stat. 1083 (1934), as amended, 47 U.S.C. 307(d) (Supp. III, 1959-61), 47 U.S.C.A. 307(d)
 
 
 [7]
 48 Stat. 1081 (1934), as amended, 47 U.S.C. 301 (1958), 47 U.S.C.A. 301
 
 
 [8]
 48 Stat. 1083 (1934), as amended, 47 U.S.C. 304 (1958), 47 U.S.C.A. 304
 
 
 [9]
 48 Stat. 1085 (1934), as amended, 47 U.S.C. 309(h) (Supp. III, 1959-61), 47 U.S.C.A. 309(h)
 
 
 [10]
 48 Stat. 1082 (1934), as amended, 47 U.S.C. 303(f) (1958), 47 U.S.C.A. 303(f)
 
 
 [11]
 60 Stat. 242 (1946), 5 U.S.C. 1008(b) (1958), 5 U.S.C.A. 1008(b)
 
 
 [12]
 48 Stat. 1083 (1934), as amended, 47 U.S.C. 307(d) (Supp. III, 1959-61), 47 U.S.C.A. 307(d)
 
 
 [13]
 60 Stat. 238 (1946), 5 U.S.C. 1003 (1958), 5 U.S.C.A. 1003
 
 
 [14]
 See, also, 47 C.F.R. 1.65 (1958)
 
 
 [15]
 48 Stat. 1085 (1934), as amended, 47 U.S.C. 309(e) (Supp. III, 1959-61), 47 U.S.C.A. 309(e)